# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:12-00048 |
| | ) | Judge Sharp |
| RICHARD OLIVE | ) | |

## MEMORANDUM

Pending before the Court are Defendant Richard Olive's (1) "Motion to Preclude Government's Use of Cease and Desist Order as Rule 404(b) Evidence for Failure to Comply with Local Criminal Rule 16.01(A)(2)(H)" (Docket No. 27); (2) "Motion to Exclude Testimony and Use of Defendant's Statements to a California Investigator at Trial" (Docket No. 30); (3) Motion to Exclude Rule 404(b) Evidence Based Upon the Government's Violation of Local Criminal Rule 16.01(1)(H) and Failure to Satisfy the Three Requirement for Admissibility under Rule 404(b)" (Docket No. 31); and (4) "Motion to Exclude Unlawful Acts Alleged in State Cease and Desist Orders as Rule 404(b) Evidence" (Docket No. 32). After briefing by the parties, the Court heard oral argument on November 1, 2012. For the following reasons, those motions will be granted in part and denied in part.

## I. BACKGROUND

On October 5, 2012, this Court entered an Order and Memorandum, denying Defendant's Motion to Strike or Dismiss. In doing so, the Court set forth the general background of this case which is of some benefit in placing Defendant's present Motions in context:

> On March 1, 2012, a federal grand jury returned a nine count Indictment against Defendant, charging him with three counts of mail fraud in violation of 18 U.S.C. § 1341; four counts of wire fraud in violation of 18 U.S.C. § 1343; and two counts of money laundering in violation of 18 U.S.C. § 1957. The allegations in the

1

Indictment span the period from late January 2006 until May 2007, and center around Defendant's role as president and executive director of the National Foundation of America ("NFOA"), a corporation.

According to the Indictment, NFOA claimed to be organized to provide charitable and humanitarian aid to numerous listed philanthropic causes but, in actuality, was geared towards defrauding owners of annuities. As a part of the alleged scheme to defraud, Defendant filed paperwork with the State of Tennessee to create NFOA as a nonprofit corporation. Thereafter, Defendant, "through highly compensated insurance agents across the country, offered and sold investment contracts labeled as NFOA's 'Installment Plan Agreement[s]'" that were marketed essentially as charitable gift annuities. (Docket No. 1, Indictment ¶ 8).

To induce annuitants and other potential customers to transfer assets to NFOA, the Indictment alleges that Defendant "and others acting on his behalf made various misrepresentations or material omissions with the intent to defraud." (Id. ¶9). So far as relevant to the present motion, these include representations that NFOA was a non-profit and charitable foundation under the Internal Revenue Code, and that Defendant[] fail[ed] to disclose to potential customers that NFOA had been subjected to cease-and-desist letters from several states.

Through the alleged scheme, Defendant is alleged to have received "approximately $20 million, a portion of which he, intentionally and with the intent to defraud, took to further the scheme and for his and others' personal benefit." (Id. ¶ 12).

United States v. Olive, 2012 WL 4757865 at *1 (M.D. Tenn. Oct. 5, 2012).

Defendant was arraigned on the charges contained in the Indictment on March 9, 2012. The Government claims that it provided its initial discovery to Defendant thirteen days thereafter, and Defendant does not claim otherwise. He does claim, however, that the initial discovery consisted of six computer disks that "imaged thousands and thousand of pages that had been seized by the state of Tennessee." He also claims that this was followed in June and August 2012 by the production of six computer hard drives and ten file boxes of hard copy documents. Defendant estimates the Government has produced "close to a hundred thousand" pages of documents, in either hard-copy or computer form.

2

In its response filed September 11, 2012 to Defendant's Motion to Dismiss or Strike, the Government indicated the Cease and Desist Orders, which had been issued by several states, were relevant direct evidence of the scheme to defraud but could also have other "possibly relevant purposes," which both the Court and Defendant took to possibly mean Rule 404(b) evidence. According to Defendant, the Government's response memorandum was the first time he was informed that the Cease and Desist Orders could possibly be used by the Government as rule 404(b) evidence.

Approximately one month before the scheduled trial date of November 13, 2012, the Government informed Defendant that it had certain evidence that might be introduced at trial, either as direct evidence of the scheme to defraud, or as Rule 404(b) evidence. That evidence included not only the Cease and Desist Orders, but also evidence relating to "the New Life International lawsuit"; Defendant's representations relating to his and his wife's salaries on a credit application to Alexander Toyota, and as a guarantor on a credit application with Mercedes Benz; that Defendant failed to report total income on his amended 2006 joint tax return; and evidence that Defendant made false and misleading representation on the Form 1023 that he submitted to the IRS when seeking tax-exempt status under Section 501(c)(3) for NFOA.

The revelation that the Government might seek to introduce some or all of the foregoing under Rule 404(b) prompted the filing of the pending Motions.[1] Essentially, Defendant forwards procedural and substantive attacks, arguing the Government has violated this Court's Local Criminal Rules relating to discovery by failing to timely disclose the evidence, and the evidence is not proper

---

[1] Defendant raises no challenge to the evidence relating to the filing of the Form 1023 and, accordingly, it is not discussed in this opinion.

Rule 404(b) evidence in this case in light of the language of the Indictment.

## II. DISCUSSION

### A. Local Criminal Rule 16.01 and Disclosure of Evidence

This Court's Local Rules govern the exchange of discovery in criminal cases. As germane to the pending motions, Local Rule 16.01 provides:

> **(2) Standing Discovery Rule.** On or before fourteen (14) days from the date of the arraignment of a defendant, the parties shall confer and the following shall be accomplished:
>
> > **a.** The government shall permit the defendant to inspect and copy, or shall supply copies of, all items listed below that are within the possession, custody, or control of the government, or the existence of which is known or by the exercise of due diligence may become known to the government:
> >
> > > **1.** Written or recorded statements made by the Defendant.
> >
> > \*             \*             \*
> >
> > **h.** The government shall advise the defendant of its intention to introduce during its case in chief evidence pursuant to *Fed. R. Evid. 404(b)*.

L.R. Crim. 16.01(a)(2)(a)(1) & (h). Local Criminal Rule 16.01 also provides:

> It shall be the continuing duty of counsel for both sides to immediately reveal to opposing counsel all newly discovered information or other material within the scope of this Rule. Upon a sufficient showing, the Court may at any time, upon motion properly filed, order that the discovery or inspection provided for by this Rule be denied, restricted, or deferred, or make such other order as is appropriate. It is expected by the Court, however, that counsel for both sides shall make every good faith effort to comply with the letter and spirit of this Rule.

L.R. Crim. 16.01(a)(2).

Only the broadest reading of this Court's standing rule on discovery in criminal cases would suggest that the Government can drop hundreds or thousands of pages on a defendant, and expect

that defendant to plow through the documents – like a boar hunting truffles – in an effort to guess what the Government thinks might be other act evidence. That is neither the letter nor spirit of the rule for, if it were, the rule would not set forth an assortment of categories of evidence which must be disclosed within fourteen days, but, instead, would simply require that all evidence to be used at trial be disclosed two weeks after arraignment.

Contrary to Defendant's suggestion, however, the failure of the Government to comply with the time requirement of Local Criminal Rule 16.01 does not automatically mean that the proffered evidence cannot be used at trial. The rule itself does not mandate such a result, but instead provides that the Court can make appropriate Orders in relation to alleged violations of Rule 16.01.

Moreover, dealing as it does with other act evidence, Local Rule 16.01(2)(h) must be read in conjunction with the reasonable notice requirements of Rule 404(b). The policy behind Rule 404(b)'s notice requirement is "'to reduce surprise and promote early resolution on the issue of admissibility.'" United States v. Barnes, 49 F.3d 1144, 1147 (6th Cir. 1995) (quoting, Advisory Committee notes); accord, United States v. Bradley, 644 F.3d 1213, 1273-74 (11th Cir. 2011). Although, the remedy for an unexcused violation of Rule 404(b)'s notice requirement is exclusion of the evidence, United States v. Gonzalez, 501 F.3d 630, 638 (6th Cir. 2007), notice given a week before trial, see, United States v. Paul, 57 Fed. Appx. 597, 607 (6th Cir. 2003), or even during trial, see, United States v. Johnson, 2000 WL 712385 at *7 (6th Cir. May 23, 2000), can be sufficient, depending upon the circumstances. See also, United States v. Green, 215 Fed. App'x 189, 190 (4th Cir. 2007) (upholding as reasonable Rule 404(b) notice provided only four days before trial); United States v. Perez-Totsta, 36 F.3d 1152, 1162 (11th Cir. 1994) (district court did not abuse its discretion in finding that notice of intent to use Rule 404(b) evidence was reasonable where it was provided

5

to defendant immediately before *voir dire* and six days before evidence was presented).

Here, the Government notified Defendant of the items it deemed to be other act evidence a month before the trial date. This is reasonable for purposes of Rule 404(b)'s notice requirement, particularly since, in light of the pending motions, the trial has been continued to February 26, 2013. Accordingly, to the extent Defendant's motions seek to preclude the Government from using Rule 404(b) evidence based solely upon the Government's failure to comply with the disclosure requirements of Local Criminal Rule 16.01(2)(h), the motions will be denied.

The Court will also deny Defendant's motion to exclude statements he allegedly made to a California Department of Corporations' employee during a telephone conversation on April 23, 2007 that were summarized by the employee and faxed to the case agent the same day. Even assuming that a detailed summary as opposed to a verbatim recitation of the telephone conversation is a "written or recorded statement made by the defendant" within the meaning of Local Criminal Rule 16.01(a)(2)(a)(1), Defendant will have had that "statement" for over four months by the time this case goes to trial and, in this respect, he can show no prejudice by the Government's failure to provide the "statement" within fourteen days of arraignment.

## B. **Rule 404(b) and Intrinsic Evidence**

Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." Fed. R. Evid. 404(b). "Before the court may admit 404(b) evidence, it must: (1) determine whether this is sufficient evidence that the

prior acts occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in the rule; and (3) apply Rule 403 balancing to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." United States v. Hardy, 643 F.3d 143, 150 (6th Cir. 2011).

The Sixth Circuit has held, however, "that Rule 404(b) is not applicable where the challenged evidence is 'inextricably intertwined' with evidence of the crime charged," United States v. Everett, 270 F.3d 986, 992 (6th Cir. 2001), "or when the acts are 'intrinsic,' or 'part of a continuing pattern of illegal activity.'" United States v. Rosin, 664 F.3d 1042, 1063 (6th Cir. 2012) (quoting, United States v. Barnes, 49 F.3d 1144, 1149 (6th Cir. 1995)). "'Background' evidence also does not implicate Rule 404(b)." United States v. Censke, 449 Fed. App'x 456, 467 (6th Cir. 2011).

### 1. *Cease and Desist Orders*

During its existence, NFOA along with Defendant, his wife, and others received Cease and Desist Orders from various states. These included Orders issued by Washington state on September 16, 2006; Iowa and Florida on April 13, 2007; Texas on May 18, 2007; Alabama on May 21, 2007; Kansas on July 3, 2007; California on July 10, 2007; and Michigan on October 12, 2007. On June 21, 2007, Defendant entered into a Consent Order, allowing the Tennessee Department of Commerce and Insurance to rehabilitate NFOA.

Each Cease and Desist Order contained allegations that NFOA was operating illegally within the state of issuance because it was not licensed to sell insurance and/or was unlawfully selling securities. The Orders also contained allegations that NFOA wrongfully claimed it had charitable exempt status under Section 501(c) of the Internal Revenue Code.

7

The Government seeks to introduce the Cease and Desist Orders, arguing that they "are inextricably intertwined with the evidence of the crimes charge, and are intrinsic to the crimes charged in the Indictment." (Docket No. 28 at 3). More specifically, the Government claims the "cease-and-deist orders are direct evidence of the scheme to defraud because they establish the nature of NFOA's business: a for-profit business (either insurance or securities) that was operating unlawfully in several states." (Id.). Alternatively, the Government argues that the Cease and Desist Orders are proper Rule 404(b) evidence of knowledge and intent.

The Government's argument that the Cease and Desist Orders are direct evidence has some appeal, but only to the limited extent of the scheme charged in the Indictment. Defendant is charged with failing to inform potential annuitants of the existence of the cease and desist letters (and their findings that NFOA was unlawfully claiming to be an exempt charitable organization), but he is not charged by way of the present Indictment with violating either state securities laws or state insurance laws. The acts undertaken allegedly in violation of state insurance and securities laws are not inextricably intertwined with evidence that Defendant allegedly defrauded annuitants by holding NFOA out as a tax exempt charitable organization to which donations of annuities would result in a tax deduction.

The Government's Rule 404(b) argument has more appeal. Certainly, allegations by state regulators that Defendant was wrongfully holding NFOA out as a charitable organization, and that Defendant failed to disclose to investors the existence of the Cease and Desist Orders suggests knowledge and intent on the part of Defendant. That is, notwithstanding the fact that state regulators had clearly placed Defendant on notice of a potential problem with the claim that NFOA was tax exempt, Defendant continued to seek out annuitants and did so without apprising them that this

8

critical claim underlying the scheme had been called into question.

The fact that several states also accused Defendant and NFOA of violating state securities and insurance laws might also be proper "other act" evidence under Rule 404(b). For example, in United States v. Benson, 79 Fed. App'x 813 (6th Cir. 2003), the Sixth Circuit rejected defendants' claim that the district court erred in admitting certain cease and desist orders, even though "the cease and desist orders did not accuse them of the crimes for which they were indicted," because it was "clear that these were 'other acts,' and were properly admitted not as evidence of defendants' guilt, but as evidence of their knowledge and intent to defraud." Id. at 820.

Nevertheless, and as already pointed out, before admitting Rule 404(b) evidence, the Court must determine whether the other act is admissible for one of the purposes set forth in the rule, and determine whether its probative value is substantially outweighed by the danger of unfair prejudice.

While the Government generically claims that the Cease and Desist Orders show "knowledge and intent" for the scheme to defraud, the scheme to defraud is premised on the allegedly wrongful representation that NFOA was a tax exempt charitable organization, and, in this respect, whether NFOA violated state securities or insurance laws is not really at issue. See, United States v. Moore, 2012 WL 3570659 at *3 (6th Cir. Aug. 21, 2012) (one of the questions to be answered in the Rule 404(b) inquiry is "whether the relevant matter is actual 'in issue'"). Moreover, even if those alleged wrongs are relevant, "[w]here relevant evidence carries with it the risk of unfair prejudice, confusion of the issues, misleading the jury or undue delay, and that risk substantially outweighs the probative value of the proffered evidence, Rule 403 provides that the evidence may be excluded." United States v. Yu Qin, 688 F.3d 257, 263-64 (6th Cir. 2102).

Here, Defendant's rebuttal of allegations that he wrongfully operated NFOA in violation of

9

various state laws could cause undue delay and "could result in a trial within a trial" that "carries with it a high risk of confusing and/or misleading the jury. " Id. at 264. "The amount of time and the number of witnesses needed to present and rebut these allegations would almost certainly influence the jury's perception of its relative importance and could cause confusion that this alleged conduct is part of the criminal charges for which Defendant[ is] on trial." Id.

Based upon the foregoing, the Court will grant Defendant's Motion insofar as he seeks to preclude evidence that various states issued Cease and Desist Orders which alleged NFOA was operating in violation state securities and insurance laws. The Court will, however, allow the Government to present evidence that NFOA and Defendant were issued Cease and Desist Orders that they did not disclose, and which alleged that NFOA was wrongfully claiming that it had received Section 501(c) exempt status. Such evidence will be limited to the Cease and Desist Orders that were issued while Defendant was still operating NFOA, and does not include the Cease and Desist Orders that were issued by Kansas, California and Michigan, after Tennessee took over operation of NFOA.[2]

### 2. *New Life Lawsuit*

In its correspondence dated October 16, 2012, the Government informed Defendant that it intended to introduce evidence "related to the New Life International lawsuit" in which Defendant and NFOA were parties. Specifically, the Government indicated that it intended to introduce

---

[2] In issuing this ruling, the Court rejects Defendant's argument that evidence of the Alabama and Texas Cease and Desist Orders is inadmissible because those Orders were issued shortly before the intervention of the Tennessee Department of Commerce and Insurance. As the Government points out, Defendant's argument is premised upon the assumption that, at the time those states issued their Cease and Desist Orders, Defendant knew that Tennessee would seek to rehabilitate NFOA. Moreover, Defendant does not claim that he changed his operations in any way upon receipt of those Cease and Desist Orders, even accepting that they were issued days before the Tennessee's takeover of NFOA.

evidence that "the funds used to settle the case were funds from NFOA," and to "introduce evidence of the lawsuit to provide background information to the scheme to defraud, such as how the defendant gained his knowledge of charitable annuity products, and the fact that he unlawfully obtained from New Life International the client lists, software, forms, and other documents that he use at NFOA." (Docket No. 31-1 at 2). In response to Defendant's Motion, and at oral argument, the Government asserted that evidence of the New Life lawsuit was background or *res gestae* evidence. The Court disagrees.

"Background evidence is a narrow category of evidence that typically provides context for the jury, either because it is directly probative, acts as a prelude to the offense or arises from the same events, forms an integral part of a witness's testimony, or completes the story of the offense." United States v. De Oleo, ___ F.3d ___, ___. 2012 WL 4121135 at * 4 (6th Cir. Sept. 20, 2012). Importantly, "the 'background circumstances exception' to the general exclusion of other act evidence is not an open ended basis to admit any and all other act evidence the proponent wishes to introduce," Hardy, 228 F.3d at 748, because "the concerns that prompted Rule 404(b) are very real and a party may not rely on this exception as a backdoor to circumvent its goals." United States v. Buentello, 423 Fed. App'x 528, 533 (6th Cir. 2011). Thus, "[t]o fall within the *res gestae* exception, evidence must 'consis[t] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.'" United States v. Owens, 458 Fed. App'x 444, 445 (6th Cir. 2012) (quoting, Hardy, 228 F.3d at 748)).

The Government has failed to adequately explain how *allegations* in a civil complaint that Defendant may have appropriated client lists, software and forms is *evidence* supporting the claim

11

in the Indictment that Defendant induced customers to transfer money to NFOA under the guise that the charitable exemption of Section 501(c) applied. The civil complaint and the allegations contained therein are not inextricably intertwined with the charged offenses, nor are those allegations necessary to tell the story of Defendant's alleged scheme.

How Defendant gained his knowledge of charitable annuity products, and how he allegedly obtained the resources to run his scheme are all matters that can be proved independently of the existence of the civil lawsuit. See, United States v. Merriweather, 78 F.3d 1070, 1077 (6th Cir. 1996) ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof."). Given the possibility of undue prejudice, the Court will not permit the Government to introduce allegations of the theft of software, proprietary information, and the like based merely upon the existence of the civil complaint.

The assertion that Defendant utilized NFOA funds to settle the New Life International lawsuit, however, stands on different footing. Among the allegations in the Indictment is that Defendant obtained some $20 million from the scheme, "a portion of which he, intentionally and with the intent to defraud, took to further the scheme and for his and others' personal benefit." (Docket No. 1, Indictment ¶ 12). If, as the Government contends, Defendant utilized NFOA funds to settle the New Life International lawsuit, this would be intrinsic evidence of a specific allegation in the Indictment. Therefore, Court will permit the Government to introduce evidence that Defendant used funds derived from the alleged scheme for his own benefit, without going into the allegations underlying the New Life International lawsuit.

### 3. Credit Applications and 2006 Amended Tax Return

The allegation that Defendant and others received personal benefit from the scheme also

drives this Court's conclusion that evidence relating to credit applications and the joint returns filed by Defendant and his wife are intrinsic evidence relating to the scheme to defraud. According to the Government, Defendant made representations in the credit application that he and his wife were both earning substantial income from NFOA and, with those representations, were able to secure the benefit of what the Government characterizes as "driving brand new luxury cars." (Docket No. 38 at 8). Defendant's representation of income on his 2006 amended tax returns is also direct evidence that he and others (his wife) received personal benefit from their affiliation with NFOA.

Alternatively, the credit applications and amended tax return constitute other acts evidence because they suggest a motive and intent for operating the scheme, and knowledge in regard to the benefit received in operating the scheme. It is true, that false representations in either the credit applications or the tax returns could prejudice Defendant in the eyes of the jury.[3] However, "[b]ecause any 'other acts' evidence offered against a defendant is to some extent prejudicial, a defendant raising a Rule 403 argument must establish 'unfair' prejudice, not mere prejudice," United States v. Talley, 164 F.3d 989, 1000 (6th Cir. 1999), and Defendant has not done so in this case. Further, insofar as evidence about the credit applications and amended tax return may prejudice Defendant because of inaccuracies, inconsistencies or misrepresentations, that "risk can be reduced by a clear, concise limiting instruction indicating the specific purpose for which the evidence is admissible." United States v. Feagan, 472 Fed. App'x 382, 390 (6th Cir. 2012); see, United States

---

[3] In its argument to the Court, the Government claims that it does not intend to show falsity with respect to the credit applications. In its letter to Defendant, however, the Government asserted that "the income he reported to the IRS was significantly less than the income he listed for himself and his wife on credit application for vehicle purchases, including Toytoa [sic] and Mercedes Benz," and that "he failed to report the total income received from NFOA to the Internal Revenue Service." (Docket No. 31-1 at 3, ¶ 4).

v. Washam, 486 Fed. App'x 568, 573 (6th Cir. 2012) ("limiting instructions go a long way to reducing any possible prejudice from Rule 404(b) evidence"); United States v. Love, 245 Fed. App'x 511, 518 (6th Cir. 2007) ("the prejudicial effect resulting from the admission of . . . prior bad acts evidence may be reduced by the use of a strong cautionary instruction pursuant to Federal Rule of Evidence 105"). Accordingly, the Court will allow the Government to introduce evidence relating to the credit applications and amended tax return.

### III. CONCLUSION

Defendant's Motions to Exclude will be granted in part and denied in accordance with the foregoing discussion. An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE